UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
YEVGENIY KABAN, individually and derivatively
as a member of FOOTBIK JV, LLC; FOOTBIK SI,
LLC (NY); FOOTBIK SI LLC (NJ); FOOTBIK USA,
LLC, FUTURE STARS, LLC,

Plaintiff,

-against-                                          Case No. 1:21-cv-2950 (BMC)

ALEXANDER BERKOVSKY and FOOTBIK USA,
LLC,

Defendants.
------------------------------------------------------------------x

## NOTICE OF DEFENDANTS' MOTION TO COMPEL MANDATORY MEDIATION / ARBITRATION OR, ALTERNATIVELY, TO DISMISS COMPLAINT

PLEASE TAKE NOTICE that, upon the accompanying Memorandum of Law and other moving papers, Defendants, Alexander Berkovsky and Footbik USA, LLC ("Defendants"), hereby move this Court to compel mandatory mediation / arbitration or, alternatively, to dismiss Plaintiff's Complaint for failure to state a claim upon under F.R.C.P. 12(b)(6), improper venue under F.R.C.P. 12(b)(3), lack of subject-matter jurisdiction under F.R.C.P. 12(b)(1), and lack of standing under F.R.C.P. 23.1.

Respectfully Submitted,

**TINOVSKY LAW FIRM**

By: /s/ Vladislav Tinovsky
Vladislav Tinovsky, Esq. (NY ID 4450375)
5 Neshaminy Interplex, Suite 205
Trevose, PA 19053
P: 215.568.6862
E: vtinovsky@tinovskylaw.com
*Attorneys for Defendants*

Dated: July 28, 2021
Trevose, Pennsylvania

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
YEVGENIY KABAN, individually and derivatively
as a member of FOOTBIK JV, LLC; FOOTBIK SI,
LLC (NY); FOOTBIK SI LLC (NJ); FOOTBIK USA,
LLC, FUTURE STARS, LLC,

                                        Plaintiff,


-against-                                                    Case No. 1:21-cv-2950 (BMC)

ALEXANDER BERKOVSKY and FOOTBIK USA,
LLC,
                                        Defendants.
-------------------------------------------------------------------x



## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL MANDATORY MEDIATION / ARBITRATION OR, ALTERNATIVELY, TO DISMISS COMPLAINT

Vladislav Tinovsky, Esq. (NY ID 4450375)
TINOVSKY LAW FIRM
5 Neshaminy Interplex, Suite 205
Trevose, PA 19053
P: 215.568.6862
E: vtinovsky@tinovskylaw.com
*Attorneys for Defendants*

Dated: July 28, 2021
Trevose, Pennsylvania

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................ 1

STATEMENT OF FACTUAL ALLEGATOINS ......................................................... 1

ARGUMENT .................................................................................................... 6

    I.    Plaintiff's Claims Should Be Arbitrated And This Case Dismissed ...................... 6

    II.    Alternatively, The Court Should Conclude That Plaintiff Is Proceeding In An Improper Venue. ................................................................................ 18

    III.    Plaintiff Has Failed To Allege Diversity Jurisdiction.......................................... 18

    IV.    Plaintiff's Claims Should Be Dismissed For Failure To State A Claim.............. 20

    V.    Derivative Counts II, IV, V And VII Should Be Dismissed Because Plaintiff Lacks Standing To Assert These Claims In This Action ..................................... 23

CONCLUSION.................................................................................................. 28

## **TABLE OF AUTHORITIES**

**Cases**

*Am. Exp. Co. v. Italian Colors Rest.*, 133 S. Ct. 2304 at 2309 (2013)........................................ 7, 8

*Arnold v. ABC, Inc.*, No. 06  Civ. 1747(GBD), 2007 U.S. Dist. LEXIS 5802, at *2 (S.D.N.Y. January 29, 2007)............................................................................................................ 23

*Ash v. Alexander*, No. 99 Civ. 3820, 2000 WL 20704, at *2 (S.D.N.Y. Jan. 12, 2000).............. 28

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ............................................................................... 20

*AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 345-46, 131 S. Ct. 1740, 1749-50 (2011)...... 7

*Atalese v. U.S. Legal Servs. Grp., L.P.*, 219 N.J. 430, 442 (2014) ............................................. 11

*Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 134 S. Ct. 568, 581 (2013)..... 18

*Barr v. Wackman*, 36 N.Y.2d 371, 381 (1975) ........................................................................... 27

*Bayerische Landesbank, New York Branch v. Aladdin Capital Management LLC*, 692 F.3d 42, 49 (2d Cir. 2012).......................................................................................................... 19

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007) ......................................................... 20

*Berkson v. Gogo LLC*, 97 F. Supp. 3d 359, 388 (E.D.N.Y. 2015) ............................................... 8

*Blank v. Pollack*, 916 F. Supp. 165, 171 (N.D.N.Y. 1996) ......................................................... 21

*Brown v. Brown*, 323 N.J. Super. 30, 36-37 (App. Div.), certif. denied, 162 N.J. 199 (1999)..... 27

*Bynum v. Maplebear Inc.*, 15-CV-6263, 2016 WL 5373643 at *5 (E.D.N.Y. Sep. 19, 2016)....... 9

*Canty v. Day*, 13 F. Supp. 3d 333, 341 (S.D.N.Y. 2014), aff'd, 599 F. App'x 20 (2d Cir. 2015) 24

*Cap Gemini Ernst & Young, U.S., L.L.C. v. Nackel*, 346 F.3d 360, 364 (2d Cir. 2003) ............... 9

*Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593 (1991) ................................................. 16

*Carr v. Credit One Bank*, No. 15-cv-6663, 2015 WL 9097314, at *3 (S.D.N.Y. Dec. 16, 2015) .................................................................................................................. 15, 16, 17

*Collins & Aikman Prods. Co. v. Building Sys., Inc.*, 58 F.3d 16, 19 (2d Cir. 1995) ................... 10

*Crescent Park Tenants Ass'n v. Realty Equities Corp.*, 58 N.J. 98, 107 (1971).......................... 25

*Dall. Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 787 (2d Cir. 2003) ................................. 16

*Davis v. Cannick*, 2015 WL 1954491, at *2 (E.D.N.Y. 2015) ................................................... 19

*Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985)................................................... 10

*Delta Funding Corp. v. Harris*, 912 A.2d 104, 111 (N.J. 2006) ................................................. 14

*Doctor's Assocs., Inc. v. Distajo*, 107 F.3d 126, 129-30 (2d Cir. 1997) ................................. 7, 17

*Elf Atochem N. Am., Inc. v. Jaffari*, 727 A.2d 286, 293-94 (Del. 1999)...................................... 26

*EPIX Holdings Corp. v. Marsh & McLennan Cos., Inc.*, 410 N.J. Super. 453, 471 (App. Div. 2009) .......................................................................................................................... 12

*Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 553 (2005)..................................... 18

*Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 281 (2d Cir. 1978) ......................................... 18

*Genesco, Inc. v. T. Kakiuchi & Co., Ltd.*, 815 F.2d 840, 844 (2d Cir. 1987) ............................. 7, 8

*Gibbons v. Malone*, 703 F.3d 595, 599 (2d Cir. 2013)................................................................ 20

*Gillman v. Chase Manhattan Bank*, 73 N.Y.2d 1, 11 (1988) ................................................. 13, 15

*Gold v. Deutsche Aktiengesellschaft*, 365 F.3d 144, 149 (2d Cir. 2004)...................................... 13

*Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 91 (2000)........................................... 9

*Halebian v. Berv*, 590 F.3d 195, 206 n.7 (2d Cir. 2009) ................................................ 24

*Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009)................................................................. 20

*Hartford Accident & Indem. Co. v. Swiss Reinsurance Am. Corp.*, 246 F.3d 219, 226 (2d Cir. 2001) ............................................................................................................ 11

*Haskel v. FPR Registry*, 862 F. Supp. 909, 916 (E.D.N.Y. 1994)............................................... 18

*Holick v. Cellular Sales of N.Y., LLC*, 802 F.3d 391, 395 (2d Cir. 2015) ...................................... 8

*Home Builders League of South Jersey, Inc. v. Berlin Tp.*, 81 N.J. 127, 134-135 (1979)........... 25

*In re Adoption of Baby T*, 160 N.J. 332 (1999).................................................................. 25

*In re Am. Int'l Grp., Inc. Derivative Litig.*, 700 F. Supp. 2d 419, 430 (S.D.N.Y. 2010), aff'd, 415 F. App'x 285 (2d Cir. 2011) ................................................................................. 24

*In re Express Indus. & Terminal Corp. v. N.Y. State Dep't of Transp.*, 93 N.Y.2d 584, 589 (1999) ........................................................................................................................ 13

*In re Refco Inc., Sec. Litig.*, 2009 WL 5548666, at *9 (S.D.N.Y. Nov. 16, 2009) ...................... 18

*In re Veeco Instruments, Inc. Sec. Litig.*, 434 F. Supp. 2d 267, 273 (S.D.N.Y. 2006) ................ 24

*Isaacs v. OCE Bus. Servs., Inc.*, 968 F. Supp. 2d 564, 569 (S.D.N.Y. 2013)............................... 17

*Jackson Dairy, Inc. v. H.P. Hood & Sons*, 596 F.2d 70, 72 (2d Cir. 1979)................................. 21

*JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 171 (2d Cir. 2004) .................................. 7, 8

*Johnson v. Priceline.com, Inc.*, 711 F.3d 271, 275 (2d Cir. 2013)............................................ 20

*Kindred Nursing Ctrs. Ltd. P'ship v. Clark*, 137 S. Ct. 1421, 1426-27 (2017)........................... 10

*Klos v. Lotnicze*, 133 F.3d 164, 168 (2d Cir. 1997) ................................................................ 16

*Laufer v. Olla Indus., Inc.*, 96 F.R.D. 230, 232 (S.D.N.Y. 1982), aff'd, 729 F.2d 1444 (2d Cir. 1983) ............................................................................................................. 25

*Leodori v. Cigna Corp.*, 175 N.J. 293, 302 (2003) ................................................................ 10

*Leveraged Leasing Admin. Corp. v. PacificCorp Capital, Inc.*, 87 F.3d 44, 47 (2d Cir. 1996)... 19

*Levine v. Smith*, 1989 WL 150784, at *5 (Del. Ch. 1989), aff'd, 591 A.2d 194 (Del. 1991)....... 24

*Linardos v. Fortuna*, 157 F.3d 945, 948 (2d Cir. 1998) ...................................................... 19

*Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*, 252 F.3d 218, 224 (2d Cir. 2001) ..................................................................................................................... 10

*Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 454 F.3d 108, 115 (2d Cir. 2006)............... 23

*Mariner's Bank v. 4921 Bergenline Corp.*, 2014 N.J. Super. Unpub. LEXIS 120, at *11-15 (App. Div. Jan. 23, 2014).................................................................................. 25, 27

*Martindale v. Sandvik, Inc.*, 173 N.J. 76, 87-88 (2002).................................................... 11

*Marx v. Akers*, 88 N.Y.2d 189, 200–01 (1996)..................................................................... 27

*McMahan Sec. Co. L.P. v. Forum Cap. Mkts. L.P.*, 35 F.3d 82, 88 (2d Cir. 1994) ..................... 10

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S. Ct. 927, 941 (1983) ...................................................................................................................... 7

*Nayal v. HIP Network Servs. IPA, Inc.*, 620 F. Supp. 2d 566, 572 (S.D.N.Y. 2009) .................. 16

*New Jersey Citizen Action v. Riveria Motel Corp.*, 296 N.J. Super. 402, 409 (App. Div.), certif. granted, 152 N.J. 13 (1997) ..................................................................... 25

*New Millennium Capital Partners, III, LLC v. Juniper Grp. Inc.*, 2010 WL 1257325, at *1 (S.D.N.Y. Mar. 26, 2010) ............................................................................................................ 19

*O Zon Inc. v. Charles*, 272 F. Supp. 3d 307, 312 (S.D.N.Y. 2003) .............................................. 20

*Pennsylvania Pub. Sch. Employees' Ret. Sys. v. Morgan Stanley & Co., Inc.*, 772 F.3d 111, 117-18 (2d Cir. 2014) ........................................................................................................... 18, 19

*Pepe v. Gen. Motors Acceptance Corp.*, 254 N.J. Super. 662, 666 (App. Div.), certif. denied, 130 N.J. 11, (1992) ...................................................................................................................... 26

*Ragone v. Atl. Video at Manhattan Ctr.*, No. 07-cv-6084, 2008 WL 4058480, at *6 (S.D.N.Y. Aug. 29, 2008) ...................................................................................................................... 15

*Sablosky v. Edward S. Gordon Co.*, 73 N.Y.2d 133, 139 (N.Y. 1989)........................................ 16

*Salovaara v. Jackson Nat'l Life Ins. Co.*, 246 F.3d 289, 298 (3d Cir. 2001) .............................. 18

*Sarbak v. Citigroup Global Markets, Inc.*, 354 F. Supp. 2d 531, 537 (D.N.J. 2004) .................. 15

*Savarese v. J.P. Morgan Chase*, No. 16-cv-321, 2016 WL 7167968, at *3 (E.D.N.Y. Nov. 16, 2016), adopted, 2016 WL 7176601 (E.D.N.Y. Dec. 7, 2016) .................................................. 7

*Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 118 (2d Cir. 2012) ................................................... 7

*Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 29-30 (2d Cir. 2002).................................... 8

*Teamsters Allied Benefit Funds v. McGraw*, No. 09 Civ. 140, 2010 WL 882883, at *7 (S.D.N.Y. Mar. 11, 2010).................................................................................................................... 28

*Waskevich v. Herold Law, P.A.*, 431 N.J. Super. 293, 298 (App. Div. 2013) ............................. 12

*Watkins v. Resorts Int'l Hotel and Casino*, 124 N.J. 398, 424 (1991)........................................ 25

*Weichert Co. Realtors v. Ryan*, 128 N.J. 427, 435 (1992) ......................................................... 12

*Whitehaven S.F., LLC v. Spangler*, 45 F. Supp. 3d 333, 342 (S.D.N.Y. 2014), aff'd, 633 F. App'x 544 (2d Cir. 2015)............................................................................................................... 7

*Young-Gibson v. Patel*, 476 Fed. App'x 482, 483 (2d Cir. June 12, 2012)................................. 19

## Statutes

15 U.S.C. § 1114.............................................................................................................. 14, 22

9 U.S.C. § 2 ............................................................................................................ 1, 6, 8, 9, 10

9 U.S.C. § 4 ................................................................................................................... 1, 7

N.J.S.A. § 42:2C-67 ............................................................................................................. 27

N.J.S.A. § 42:2C-68 ............................................................................................................. 26

N.J.S.A. § 42:2C-70 ............................................................................................................. 26

## Rules

Rule 12(b)(1)................................................................................................................ 1, 18, 19

Rule 12(b)(3)................................................................................................................ 1, 17, 18

Rule 12(b)(6)........................................................................................................ 1, 19, 20, 23, 24

Rule 23.1 ............................................................................................................. 1, 23, 24, 27

Pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 2-4 (the "FAA" or the "Act"), and Federal Rules of Civil Procedure 12(b)(1), 12(b)(3), 12(b)(6) and 23.1, Defendants respectfully submits this memorandum of law and the declaration of Alexander Berkovsky ("Berkovsky Decl.") attached hereto as <u>Exhibit 1</u> in support of this motion to compel mandatory, contractual mediation and/or arbitration, or alternatively, to dismiss the complaint for lack of subject-matter jurisdiction, improper venue, and failure to state a claim upon which relief can granted.

## INTRODUCTION

This action relates to a dispute among certain owners of related entities engaged in youth soccer training primarily in New York and New Jersey. Plaintiff filed the eight-count Complaint on May 26, 2021. The Complaint seeks to allege claims of: accounting based on breach of fiduciary duty (Count I); breach of fiduciary duty (Count II); breach of contract under the operating agreements ("OAs") (Count III); conversion of monies in connection with sale of franchise (Count IV); theft of trade secrets (Count V); declaratory relief that the OAs are valid and enforceable under New York law (Count VI); "injunctive relief" (Count VII);  trademark infringement under 15 U.S.C. § 1114 (Count VIII). See Complaint ("Compl.") at ¶¶ 56-60; 61-66; 67-72; 73-78; 79-84; 85-88; 89-93. Plaintiff's claims relate to the business of franchising children's soccer club entities in the United States through Footbik USA, the franchisor. Compl. ¶ 33.  Franchisee soccer clubs in New York and New Jersey, including clubs owned by Footbik Members, pay franchise and royalty fees to Footbik USA. Compl. ¶ 34.

## STATEMENT OF FACTUAL ALLEGATOINS

Footbik USA, LLC, Footbik JV, LLC, Footbik SI, LLC[1] ("Footbik Entities") operate pursuant to OAs executed by Plaintiff Yvgeniy Kaban ("Kaban"), Defendant Alexander

---

[1] Plaintiff has alleged, erroneously, that Footbik SI, LLC are two separate entities.  Footbik SI, LLC is a single, New Jersey limited liability company that operates in New York and New Jersey.

Berkovsky ("Berkovsky") and non-party Alexey Vitashkevich ("Footbik Members"). Compl. ¶¶ 7, 31; Berkovsky Decl. ¶ 2. Presently Kaban and Berkovsky each have 46.25% of membership interest in Footbik Entities with Vitashkevich holding 7.5% of membership interest in Footbik Entities. Compl. ¶ 30; Berkovsky Decl. ¶ 3.

The franchisees use compilations of soccer training exercises that are taught to young children between the ages of 1.5-7 during training sessions. Compl. ¶ 15. The training exercises are compiled in a database and are described in the Complaint, erroneously, as "trade secrets" held by the entities.  Compl. ¶ 51.

Plaintiff Kaban is the owner of a United States trademark registration for FOOTBIK. Compl. ¶ 39. Kaban entered into a valid Trademark License Agreement ("TLA") with Footbik USA where Kaban is the Licensor and Footbik USA is the Licensee. Compl. ¶¶ 40-41. Under the terms of the TLA, Kaban is entitled to annual payments, and in 2020, Kaban sent Footbik USA an invoice for the use of trademark, but Footbik USA did not make payment. Compl. ¶¶ 42-43.  Kaban selected his own counsel to draft the TLA. Berkovsky Decl. ¶¶11-12.

### Mediation and Arbitration Clause in the OAs.

On or about October 1, 2018, the Footbik Members (including Plaintiff and Berkovsky) executed and entered into an OA relating to the business and operations of Footbik USA, which provided for mandatory dispute resolution, mediation and arbitration of all disputes and claims asserted in this action relating to Footbik USA in New Jersey, New Jersey choice of law, New Jersey venue, and attorney's fees provisions.  Berkovsky Decl. ¶4.

The OA provides that **New Jersey law shall govern**:

> 1.2 *Governing Law*. This Agreement shall be governed by and construed and interpreted in accordance with the laws of the State of New Jersey, including the New Jersey Revised Uniform Limited Liability Company Act, (the "Act") as amended from time to time, without regard to New Jersey's

conflicts of laws principles. The rights and liabilities of the Members shall be determined pursuant to the Act and this Agreement. To the extent that any provision of this Agreement is inconsistent with any provision of the Act, this Agreement shall govern to the extent permitted by the Act.

The OA contains mandatory dispute resolution, and mandatory mediation and arbitration provisions. Specifically, Article 10, titled Dispute Resolution, provides, in pertinent part:

10.1 *Disputes Among Members*. The Members agree that in the event of any dispute or disagreement solely between or among any of them arising out of, relating to or in connection with this Agreement or the Company or its organization, formation, business or management ("Member Dispute"), the Members shall use their best efforts to resolve any dispute arising out of or in connection with this Agreement by good-faith negotiation and mutual agreement. The Members shall meet at a mutually convenient time and place to attempt to resolve any such dispute.

However, in the event that the Members are unable to resolve any Member Dispute, such parties shall first attempt to settle such dispute through a non-binding mediation proceeding. In the event any party to such mediation proceeding is not satisfied with the results thereof, then any unresolved disputes shall be finally settled in accordance with an arbitration proceeding. In no event shall the results of any mediation proceeding be admissible in any arbitration or judicial proceeding.

10.2 *Mediation*. Mediation proceedings shall be conducted in accordance with the Commercial Mediation Rules of the American Arbitration Association (the "AAA") in effect on the date the notice of mediation was served, other than as specifically modified herein, and shall be non-binding on the parties thereto.

* * *

10.3 *Arbitration*. Arbitration proceedings shall be conducted under the Rules of Commercial Arbitration of the AAA (the "Rules"). A Member may withdraw from the Member Dispute by signing an agreement to be bound by the results of the arbitration. A Member who withdraws shall have no further right to participate in the Member Dispute.

* * *

The arbitrator shall have all powers of law and equity, which it can awfully assume, necessary to resolve the issues in dispute including, without limiting the generality of the foregoing, making awards of compensatory damages, issuing both prohibitory and mandatory orders in the nature of injunctions and compelling the production of documents and witnesses for

3

> presentation at the arbitration hearings on the merits of the case. *** The statutory, case law and common law of the State of New Jersey shall govern in interpreting their respective rights, obligations and liabilities arising out of or related to the transactions provided for or contemplated by this Agreement, including without limitation, the validity, construction and performance of all or any portion of this Agreement, and the applicable remedy for any liability established thereunder, ***.
>
> Any action or proceeding subsequent to any Award rendered by the arbitrator in the Member Dispute, including, but not limited to, any action to confirm, vacate, modify, challenge or enforce the arbitrator's decision or award shall be filed in a court of competent jurisdiction in the same county where the arbitration of the Member Dispute was conducted, and New Jersey law shall apply in any such subsequent action or proceeding.

Berkovsky Decl. ¶¶ 4,6.

The Footbik USA OA further provides that attorney's fees are awardable in connection with this Motion. Specifically, Section 11.13 of the OA, titled Attorneys' Fees, states:

> 11.13 *Attorneys' Fees*. In any dispute between or among the Company and one or more of the Members, including, but not limited to, any Member Dispute, the prevailing party or parties in such dispute shall be entitled to recover from the non-prevailing party or parties all reasonable fees, costs and expenses including, without limitation, attorneys' fees, costs and expenses, all of which shall be deemed to have accrued on the commencement of such action, proceeding or arbitration. Attorneys' fees shall include, without limitation, fees incurred in any post-award or post-judgment motions or proceedings, contempt proceedings, garnishment, levy, and debtor and third party examinations, discovery, and bankruptcy litigation, and prevailing party shall mean the party that is determined in the arbitration, action or proceeding to have prevailed or who prevails by dismissal, default or otherwise.

*Id.* The Footbik USA OA further provides that New Jersey shall be the exclusive venue and jurisdiction for any dispute or controversy arising out of or relating to or in any way connected with the OA, which applies to all claims asserted in this action. Specifically, Section 11.15 of the OA, titled Jurisdiction and Venue / Equitable Remedies, states:

> 11.15 *Jurisdiction and Venue/Equitable Remedies*. The Company and each Member hereby expressly agrees that if, under any circumstances, any dispute or controversy arising out of or relating to or in any way connected

4

with this Agreement shall, notwithstanding Article X, be the subject of any court action at law or in equity, such action shall be filed exclusively in the courts of the State of New Jersey. Each Member agrees irrevocably and unconditionally consents and submits to the personal and exclusive jurisdiction of such courts for the purposes of litigating any such action, and hereby grants jurisdiction to such courts and to any appellate courts having jurisdiction over appeals from such courts or review of such proceedings. *** Members will be entitled to recover all reasonable costs and expenses, including but not limited to all reasonable attorneys' fees, expert and consultants' fees, incurred in connection with the enforcement of this Section.

*Id.* The Footbik USA OA was executed by the Members.  Compl. 31; Berkovsky Decl. ¶4. Likewise, the OAs for the Footbik SI, LLC and Footbik JV, LLC entities contain similar provisions for dispute resolution, choice of law, venue, attorney's fees and were signed by the members.  Berkovsky Decl. ¶¶6, 8, 10.  The OAs for the Footbik Entities were negotiated between the Footbik Members.  *Id*. at ¶9.  Kaban selected counsel to draft the OAs for the Footbik Entities.  *Id*. at ¶7. A true and correct copy of the OA for Footbik USA, Footbik JV, LLC and Footbik SI, LLC is attached to the Berkovsky Declaration as <u>Exhibit A, B and C</u> and are incorporated herein by reference.  *Id*. at ¶10.

## <u>Mediation and Arbitration Clause in the TLA</u>

On August 30, 2017, the Plaintiff Kaban and Defendant Footbik USA entered into a TLA (Compl. ¶40), which provided for the arbitration of all disputes and claims asserted in this action through the American arbitration Association in New York. Berkovsky Decl. ¶11.  Specifically, Section 14 of the TLA was executed by the parties, and states, in relevant part, as follows:

### 14. JURISDICTION AND DISPUTES

A.      This Agreement shall be governed in accordance with the laws of the State of New York, United States of America.

B.      Any controversy, claim or dispute arising out of or relating to this Agreement or the breach, termination, enforcement, interpretation or validity thereof, including the determination of the scope or applicability of

5

this agreement to arbitrate (except at the option of either party for any application for injunctive relief) shall be finally settled by arbitration in New York County, New York State under the rules of the American Arbitration Association (AAA) before one arbitrator and judgment upon the award rendered may be entered in any court having jurisdiction. In this regard, the parties submit to the personal subject matter jurisdiction of the State of New York. The arbitration provisions of this Section shall be interpreted according to, and governed by, the Federal Arbitration Act, and any action to enforce any rights hereunder shall be brought exclusively in the U.S. District Court in NY State. EACH PARTY HERETO KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVES ANY RIGHT TO A TRIAL BY JURY OF ANY DISPUTE RELATING TO THIS AGREEMENT AND AGREES THAT ANY SUCH ACTION SHALL BE ADJUDICATED BY AN ARBITRATOR AND WITHOUT A JURY.

*Id*. at ¶¶ 11, 12, 15. A true and correct copy of the TLA is attached to the Berkovsky Declaration as <u>Exhibit D</u>.  *Id*. at ¶ 15.

Accordingly, pursuant to the clear and comprehensive dispute resolutions provisions of the OAs and the TLA, Plaintiff agreed to mediate and/or arbitrate via the American Arbitration Association all claims asserted in this action in either New Jersey or New York. Therefore, Plaintiff Kaban knowingly and improperly commenced this action in this Court, and Defendants are entitled to compel arbitration, or in the alternative, to dismiss this action, and recover their attorney's fees in connection with this improperly commenced action.

## **ARGUMENT**

### I.   **PLAINTIFF'S CLAIMS SHOULD BE ARBITRATED AND THIS CASE DISMISSED**

Under the FAA, a written agreement to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract". 9 U.S.C. § 2. As the Supreme Court has said, "our cases place it beyond dispute that the FAA was designed to promote arbitration. The Court has repeatedly described the Act as embodying a national policy favoring arbitration, and a liberal policy favoring arbitration agreements ...." *AT&T*

*Mobility LLC v. Concepcion*, 563 U.S. 333, 345-46, 131 S. Ct. 1740, 1749-50 (2011) (internal quotation marks and citation omitted). "[C]onsistent with [the] text [of the FAA], courts must rigorously enforce arbitration agreements according to their terms", *Am. Exp. Co. v. Italian Colors Rest.*, 133 S. Ct. 2304 at 2309 (2013) (internal quotation marks omitted), and "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration", *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S. Ct. 927, 941 (1983); *see JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 171 (2d Cir. 2004); *Genesco, Inc. v. T. Kakiuchi & Co., Ltd.*, 815 F.2d 840, 844 (2d Cir. 1987).   Once the party moving to compel arbitration makes a prima facie showing that an agreement to arbitrate exists, the burden shifts to the party resisting arbitration to show (i) that she did not agree to the arbitration provision, (ii) that the arbitration provision is invalid or unenforceable, or (iii) that the arbitration provision does not encompass his claims. *See Savarese v. J.P. Morgan Chase*, No. 16-cv-321, 2016 WL 7167968, at *3 (E.D.N.Y. Nov. 16, 2016), adopted, 2016 WL 7176601 (E.D.N.Y. Dec. 7, 2016); *Whitehaven S.F., LLC v. Spangler*, 45 F. Supp. 3d 333, 342 (S.D.N.Y. 2014), aff'd, 633 F. App'x 544 (2d Cir. 2015). On a motion to compel arbitration such as this, the court applies a summary judgment standard to those three questions, under which the party resisting arbitration must prove that there is a genuine issue of material fact with regards to at least one of them. *See Doctor's Assocs., Inc. v. Distajo*, 107 F.3d 126, 129-30 (2d Cir. 1997); 9 U.S.C. § 4.

"The threshold question facing any court considering a motion to compel arbitration is . . . whether the parties have indeed agreed to arbitrate." *Schnabel v. Trilegiant Corp*., 697 F.3d 110, 118 (2d Cir. 2012). If such an agreement exists, the court must evaluate whether the claims asserted fall within the agreement's scope. If claims arising under federal law are asserted, the court must also consider whether Congress intended those claims to be non-arbitrable. *JLM Indus., Inc.*, 387

F.3d at 169. Where an agreement exists, asserted claims fall within the scope of the agreement, and there is no indication that Congress intended any asserted federal claims to be non-arbitrable, the arbitration agreement should be "rigorously enforce[d] . . . according to [its] terms." *Italian Colors*, 133 S. Ct. 2304, 2309, 186 L. Ed. 2d 417 (2013). As a contract, an arbitration agreement requires an offer and a knowing acceptance. "'Mutual manifestation of assent' is the 'touchstone' of a binding contract. *Berkson v. Gogo LLC*, 97 F. Supp. 3d 359, 388 (E.D.N.Y. 2015) (quoting *Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 29-30 (2d Cir. 2002)).

Plaintiff cannot meet the burden required to prevent his claims from proceeding in the parties' preselected arbitral forum—because there is no genuine question of fact as to whether Plaintiff Kaban bound himself to the arbitration agreements (he did) (see Section I.B.a), whether the arbitration agreements are valid and enforceable (they are) (see Section I.B.a and c), or whether Plaintiff's claims fall within their scope (they do) (see Section I.B.b and d). For these reasons, described more fully below, Plaintiff's claims against Defendants must be resolved through arbitration, and this action dismissed.

## A.     Standards For Motion To Compel Arbitration.

It is well-established that federal public policy strongly favors arbitration. See e.g. *Holick v. Cellular Sales of N.Y., LLC*, 802 F.3d 391, 395 (2d Cir. 2015). To that end, the Federal Arbitration Act ("FAA") requires a federal court to enforce an arbitration agreement and to stay (or dismiss) litigation that contravenes it. 9 U.S.C. § 2. The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Genesco*, 815 F.2d at 844 (citations and quotations omitted).

To determine whether arbitration should be compelled, this Court must assess (1) whether the parties agreed to arbitrate; (2) whether the asserted claims fall within the scope of the arbitration agreement; (3) if federal statutory claims are at issue, whether Congress intended such claims to be non-arbitrable; and (4) if only some of the claims are arbitrable, whether to stay the balance of the proceedings pending arbitration. *Id.*; see also *Bynum v. Maplebear Inc.*, 15-CV-6263, 2016 WL 5373643 at *5 (E.D.N.Y. Sep. 19, 2016). Once satisfied that "the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4.

Because the *Genesco* factors are easily satisfied, Defendants' Motion to Compel should be granted.

Arbitration is a matter of contract. As with all contracts, an arbitration agreement is not enforceable if "grounds exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Court looks to state contract law to determine the enforceability of an arbitration agreement. *Cap Gemini Ernst & Young, U.S., L.L.C. v. Nackel*, 346 F.3d 360, 364 (2d Cir. 2003). Here, New Jersey law governs the OAs and New York law governs the TLA.

All evidence indicates that a valid arbitration agreement(s) existed between the parties. Defendants submit signed copies of the OAs and the TLA, each having arbitration clauses, and in Plaintiff's Complaint, Plaintiff pleaded that he and the applicable Defendants executed the agreements. (Compl. ¶¶ 31, 35, 40). "[T]he party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 91 (2000). Here, there is no reason to doubt the validity of the arbitration clauses agreements, which appear to be enforceable on their face.

**B.      The Arbitration Clauses in the OAs and in the TLA Require Arbitration Of This Entire Case**

When determining whether a valid contract to arbitrate exists, courts must apply ordinary state-law principles that govern contract formation, "cannot subject an arbitration agreement to more burdensome requirements than those governing the formation of other contracts." See *Leodori v. Cigna Corp.*, 175 N.J. 293, 302 (2003); accord *Kindred Nursing Ctrs. Ltd. P'ship v. Clark*, 137 S. Ct. 1421, 1426-27 (2017) (Kagan, J.) (holding state court's "clear-statement rule" requiring explicit statement in order to waive access to jury trail fails to place arbitration agreements on equal footing with other contracts and contrary to the FAA's edict against singling out those contracts for disfavored treatment").

Courts generally construe arbitration clauses broadly. See, e.g., *McMahan Sec. Co. L.P. v. Forum Cap. Mkts. L.P.*, 35 F.3d 82, 88 (2d Cir. 1994) ("[F]ederal policy favoring arbitration requires us to construe arbitration clauses as broadly as possible[.]" (internal quotation marks omitted)); accord *Collins & Aikman Prods. Co. v. Building Sys., Inc.*, 58 F.3d 16, 19 (2d Cir. 1995). Where, as here, the arbitration clause is broad, there is a "presumption of arbitrability". *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*, 252 F.3d 218, 224 (2d Cir. 2001) (quoting *Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.*, 58 F.3d 16, 23 (2d Cir. 1995)). This is so because "[w]hen parties use expansive language in drafting an arbitration clause, presumably they intend all issues that touch matters within the main agreement to be arbitrated." *Id.* at 225. "[T]he [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985).

Here, the arbitration clauses in the OAs and in the TLA must be enforced because no "grounds . . . exist at law or in equity for the revocation of [the] contract". 9 U.S.C. § 2. Because

the arbitration clauses were expressly negotiated and assented to by Plaintiff (see Section I.B.a), and are valid and enforceable (see Section I.B.a and c), arbitration should be compelled, so long as the parties' dispute falls within the scope of the arbitration agreement. *See Hartford Accident & Indem. Co. v. Swiss Reinsurance Am. Corp.*, 246 F.3d 219, 226 (2d Cir. 2001). The disputes clearly fall within the scope of the arbitration clauses (see Section I.B.b and d). On their face, the arbitration clause in each of the OAs unambiguously require the parties to try to resolve in good faith, then mediate, then arbitrate" any dispute or disagreement solely between or among any of them arising out of, relating to or in connection with this Agreement or the Company or its organization, formation, business or management ("Member Dispute")…."   Similarly, the arbitration clause in the TLA plainly requires the parties to arbitrate "[a]ny controversy, claim or dispute arising out of or relating to this Agreement or the breach, termination, enforcement, interpretation or validity thereof, including the determination of the scope or applicability of this agreement to arbitrate (except at the option of either party for any application for injunctive relief)…"   The parties should be compelled to arbitrate their disputes and this matter should be dismissed.

### a. The Arbitration Clause in the OAs Are Valid and Enforceable under New Jersey Law.

Under New Jersey law[2], an enforceable contract requires mutual assent and consideration. *Atalese v. U.S. Legal Servs. Grp., L.P.*, 219 N.J. 430, 442 (2014) (discussing the mutual assent requirement); *Martindale v. Sandvik, Inc.*, 173 N.J. 76, 87-88 (2002) (discussing the consideration requirement).

---

[2] The FAA governs the determination of this Motion to Compel Arbitration. Still, New Jersey also has a public policy favoring arbitration agreements. See *Martindale v. Sandvik, Inc.*, 173 N.J. 76, 84–85 (2002) (collecting cases). The New Jersey Legislature demonstrated its endorsement of this public policy in favor of arbitration by enacting the NJAA. Id. at 84. Like the FAA, the NJAA provides that agreements to arbitrate are "valid, enforceable, and irrevocable except upon a ground that exists at law or in equity for the revocation of a contract." N.J. Stat. § 2A:23B-6(a)

The first requirement, mutual assent, is evident here, as Plaintiff affirmatively pleaded in his Complaint that he agreed to enter into the OAs containing the arbitration clauses at issue. Compl ¶31.  Offer and acceptance establish mutual assent sufficient to create a contract. See *Weichert Co. Realtors v. Ryan*, 128 N.J. 427, 435 (1992) ("A contract arises from offer and acceptance…. Thus, if parties agree on essential terms and manifest an intention to be bound by those terms, they have created an enforceable contract.").  Here, Plaintiff Kaban negotiated and agreed to the terms in the OAs, which includes the arbitration clause. Berkovsky Decl. ¶ 10.  The consideration is set forth in OAs.

### b. The Scope of the Arbitration Clauses In the OAs Unambiguously Covers Kaban's State Court Action Claims.

The OAs each provide, "the Members agree that in the event of any dispute or disagreement solely between or among any of them arising out of, relating to or in connection with this Agreement or the Company or its organization, formation, business or management ("Member Dispute")… and further provides, "in the event that the Members are unable to resolve any Member Dispute, such parties shall first attempt to settle such dispute through a non-binding mediation proceeding. In the event any party to such mediation proceeding is not satisfied with the results thereof, then any unresolved disputes shall be finally settled in accordance with an arbitration proceeding."

Courts in New Jersey apply a "presumption of arbitrability" whereby "an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Waskevich v. Herold Law, P.A.*, 431 N.J. Super. 293, 298 (App. Div. 2013) (quoting *EPIX Holdings Corp. v. Marsh & McLennan Cos., Inc.*, 410 N.J. Super. 453, 471 (App. Div. 2009)).

Here, in Count I, II and III of the Complaint, Plaintiff claims a breach contract concerning the OAs (Count III), breach of fiduciary duty arising out of the Operating Agreements (Count II), and seek an accounting based on the claimed breaches of said fiduciary duties (Count I).  Counts IV, V and VII relate to claims for conversion of monies in connection with sale of franchise (Count IV), and seeking remedies, including injunctive relief (Count VII) concerning theft of purported trade secrets—soccer training information used to train children—maintained by the Footbik Entities (Count V). In Count VI, Plaintiff seeks declaratory relief that the OAs are valid and enforceable under New York law.  Compl. ¶¶ 86-88. Accordingly, Plaintiff's claims fall squarely within the scope of the arbitration clause contained in each of the OAs.

### c. The Arbitration Clause in the TLA Is Valid and Enforceable under New York Law.

The TLA provides for New York law. Berkovsky Decl. ¶9.  Under New York law, a valid arbitration agreement requires "a manifestation of mutual assent sufficiently definite to assure that the parties are truly in agreement*[.]" In re Express Indus. & Terminal Corp. v. N.Y. State Dep't of Transp*., 93 N.Y.2d 584, 589 (1999). By signing a written instrument, a party creates presumptive evidence of its assent to enter into a binding agreement. *See, e.g., Gold v. Deutsche Aktiengesellschaft*, 365 F.3d 144, 149 (2d Cir. 2004); *Gillman v. Chase Manhattan Bank*, 73 N.Y.2d 1, 11 (1988) (holding that a party's signature generally creates a presumption that the party assented to the terms of the agreement). Here again, Plaintiff Kaban affirmatively pleaded in his Complaint that he agreed to enter into the TLA, having the arbitration clause. Compl. ¶¶ 98-99. Plaintiff signed the TLA, which was negotiated at arms-length and for which Plaintiff had selected counsel. Berkovsky Decl. ¶¶ 9-12.   The arbitration clause is in the TLA, and accordingly, Plaintiff Kaban is bound to arbitrate his claims within the scope of that arbitration clause.

### d.   The Scope of the Arbitration Clause In the TLA Unambiguously Covers Plaintiff Kaban's claims Regarding Unpaid Royalties.

On its face, the arbitration clause in the TLA covers "Any controversy, claim or dispute arising out of or relating to this Agreement or the breach, termination, enforcement, interpretation or validity thereof, including the determination of the scope or applicability of this agreement to arbitrate (except at the option of either party for any application for injunctive relief)…." Here, Plaintiff's purported claims for trademark infringement under 15 U.S.C. § 1114 (Count VIII) relate to claims of unpaid royalties under the TLA. Compl. ¶¶ 95-102.  Accordingly, Plaintiff's claim concerning trademark royalties plainly falls within the scope of the arbitration clause in the TLA, and even it was a cognizable claim for trademark infringement under 15 U.S.C. § 1114 (it is not), it would still fall plainly within the scope of the arbitration clause in the TLA.

### e.   The Arbitration Clause Is Not Procedurally Unconscionable.

In the Complaint, Plaintiff appears to preview an argument that the arbitration agreements are invalid or unenforceable because they purportedly "has [sic] terms that shock the conscience". Compl. ¶ 86.

Under New Jersey law, an unconscionability determination requires evaluation of both procedure and substance. *Rodriguez v. Raymours Furniture Co*., 138 A.3d 528, 541 (N.J. 2016). New Jersey courts apply "a sliding-scale approach to determine overall unconscionability, considering the relative levels of both procedural and substantive unconscionability." *Delta Funding Corp. v. Harris*, 912 A.2d 104, 111 (N.J. 2006). New Jersey courts consider four additional factors when determining whether to enforce a contract of adhesion: "(1) the subject matter of the contract, (2) the parties' relative bargaining positions, (3) the degree of economic compulsion motivating the 'adhering' party, and (4) the public interests affected by the contract." *Id.* (internal quotation omitted). These "factors focus on procedural and substantive

aspects of the contract to determine whether the contract is so oppressive, or inconsistent with the vindication of public policy, that it would be unconscionable to permit its enforcement." *Rodriguez*, 138 A.3d at 542. New Jersey adheres to a general policy favoring the arbitration of disputes over traditional litigation. *See, e.g., Sarbak v. Citigroup Global Markets, Inc*., 354 F. Supp. 2d 531, 537 (D.N.J. 2004); *Rodriguez*, 138 A.3d at 541.  In this case, the individual members of the Footbik Entities negotiated and entered into arm-length commercial agreements. Berkovsky Decl. ¶ 8-12.  None of the factors for unconscionability are present here.

Under New York law, a contract is unconscionable only when it is "so grossly unreasonable or unconscionable in the light of the mores and business practices of the time and place as to be unenforceable according to its literal terms". *Ragone v. Atl. Video at Manhattan Ctr*., No. 07-cv-6084, 2008 WL 4058480, at *6 (S.D.N.Y. Aug. 29, 2008), aff'd, 595 F.3d 115 595 F.3d at 121-22 (alteration omitted) (quoting *Gillman v. Chase Manhattan Bank, N.A*., 73 N.Y.2d 1, 10 (1988)). "[A] determination of unconscionability generally requires a showing that the contract was both procedurally and substantively unconscionable . . . ." *Carr v. Credit One Bank*, No. 15-cv-6663, 2015 WL 9077314, at *3 (S.D.N.Y. Dec. 16, 2015) (emphasis added). "The procedural element . . . concerns the contract formation process and the alleged lack of meaningful choice; the substantive element looks to the content of the contract . . . ." *Ragone*, 595 F.3d at 121-22 (quoting *State v. Wolowitz*, 468 N.Y.S.2d 131, 145 (1983)).  Here, Plaintiff has not shown that the arbitration clauses in the OAs or the TLA are either procedurally or substantively unconscionable—and it must be both—in order for his to escape its enforcement in this case. *See Carr*, 2015 WL 9077314, at *3.

The factors relevant to a determination of whether the process of entering into a contract was procedurally unconscionable are "(1) the size and commercial setting of the transaction; (2)

whether there was a lack of meaningful choice by the party claiming unconscionability; (3) the experience and education of the party claiming unconscionability; and (4) whether there was disparity in bargaining power". *Dall. Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 787 (2d Cir. 2003) (quoting *Gillman*, 73 N.Y.2d at 10-11). "[C]laim[s] that the contract is one of adhesion or that it results from procedural unconscionability . . . are judged by whether the party seeking to enforce the contract has used high pressure tactics or deceptive language in the contract and whether there is inequality of bargaining power between the parties". *Sablosky v. Edward S. Gordon Co.*, 73 N.Y.2d 133, 139 (N.Y. 1989); see *Klos v. Lotnicze*, 133 F.3d 164, 168 (2d Cir. 1997) ("[The concept of adhesion contracts] may not be invoked to trump the clear language of the agreement unless there is a disturbing showing of unfairness, undue oppression, or unconscionability." (citing *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593 (1991)).

Here, the OAs and TLA were negotiated, arms-length, commercial transactions. Berkovsky Decl. ¶¶ 8-12. Plaintiff Kaban does not allege facts supporting a claim of procedural unconscionability under any of the relevant factors. There can be no suggestion that Plaintiff Kaban had no "meaningful choice" to agree to these commercial arrangements. Plaintiff Kaban does not even try to allege a "disparity in bargaining power", let alone one sufficient to establish that the arbitration clauses are procedurally unconscionable. Instead, "arbitration agreements are enforceable despite an inequality in bargaining power unless coupled with high pressure tactics that coerce agreement". *Carr*, 2015 WL 9077314, at *3 (quoting *Nayal v. HIP Network Servs. IPA, Inc.*, 620 F. Supp. 2d 566, 572 (S.D.N.Y. 2009)); *see also Ragone*, 595 F.3d at 122. Here, tere is not a single allegation, or any evidence, of high-pressure tactics by Defendants that coerced Plaintiff Kaban's agreement(s) to arbitrate. Plaintiff Kaban has failed to carry a significant burden

of showing that the arbitration clauses are procedurally unconscionable. This alone forecloses any potential claim of unconscionability. *See Carr*, 2015 WL 9077314, at *3.

### f. The Arbitration Agreement Is Reasonable, Not Substantively Unconscionable.

Plaintiff has also failed to show that the arbitration clause(s) are "so grossly unreasonable as to be unenforceable according to its literal terms and those contract terms are unreasonably favorable to the party seeking to enforce the contract", *Isaacs v. OCE Bus. Servs., Inc.*, 968 F. Supp. 2d 564, 569 (S.D.N.Y. 2013)—which also independently bars his suggestion of unconscionability. There is a "strong federal policy favoring arbitration", *Distajo*, 107 F.3d at 130, and Plaintiff's conclusory suggestion that the arbitration clauses have terms that shock the conscience cannot overcome that policy.

### g. There are No Non-Arbitrable Federal Claims.

Here, as explained below in Defendants' Motion to Dismiss for failure to state a claim concerning Count VIII for purported trademark infringement (Section IV.B and C) because the trademark infringement claim is actually a state law breach of contract claim seeking purported unpaid royalties under a TLA, Plaintiff has not asserted any cognizable claims arising under federal law. Plaintiff Kaban had notice of the mediation /arbitration provisions found in the OAs and TLA when he negotiated and signed the agreements. He and his counsel also had notice of the mediation /arbitration provisions before filing this lawsuit. Plaintiff Kaban cannot now claim that he was unaware of those terms. Plaintiff Kaban is bound by the broad arbitration clauses contained within those contracts. Accordingly, the parties should proceed to arbitrate their claims and Plaintiff's Complaint should be dismissed.

## II.   ALTERNATIVELY, THE COURT SHOULD CONCLUDE THAT PLAINTIFF IS PROCEEDING IN AN IMPROPER VENUE.

Transfer is not available when a forum selection clause specifies a non-federal forum; instead, the district court should dismiss the action so it can be filed in the appropriate forum. *See Salovaara v. Jackson Nat'l Life Ins. Co.*, 246 F.3d 289, 298 (3d Cir. 2001) ("Transfer is not available, however, when a forum selection clause specifies a non-federal forum . In that case, … the district court would have no choice but to dismiss the action so it can be filed in the appropriate forum so long as dismissal would be in the interests of justice."). See also, F.R.C.P. 12(b)(3).

The party seeking to avoid the forum selection clause has the burden of proving that it is unreasonable, and therefore invalid. *In re Refco Inc., Sec. Litig.*, 2009 WL 5548666, at *9 (S.D.N.Y. Nov. 16, 2009) ("It is well-settled that a party seeking to obtain the benefits of a contract must also accept its burdens, including contractual forum selection"). "Once a mandatory forum selection clause is determined to be valid, the plaintiff bears the burden of showing why the contractual provision should not be enforced." *Haskel v. FPR Registry*, 862 F. Supp. 909, 916 (E.D.N.Y. 1994) (citing *Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 281 (2d Cir. 1978)). "When the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause." *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 134 S. Ct. 568, 581 (2013).  Accordingly, Plaintiff's Complaint should be dismissed for improper forum pursuant to F.R.C.P. 12(b)(3).

## III.   PLAINTIFF HAS FAILED TO ALLEGE DIVERSITY JURISDICTION

According to the Complaint, jurisdiction is premised upon diversity. Compl. ¶10. Diversity jurisdiction exists when all plaintiffs are citizens of states diverse from those of all defendants. *Pennsylvania Pub. Sch. Employees' Ret. Sys. v. Morgan Stanley & Co., Inc.*, 772 F.3d 111, 117-18 (2d Cir. 2014) (citing *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 553 (2005)).

The party asserting diversity jurisdiction has the burden to prove the same. *Pennsylvania Pub. Sch. Employees' Ret. Sys.*, 772 F.3d at 118. "[D]iversity of citizenship should be distinctly and positively averred in the pleadings, or should appear with equal distinctness in other parts of the record[.]" *Leveraged Leasing Admin. Corp. v. PacificCorp Capital, Inc*., 87 F.3d 44, 47 (2d Cir. 1996) (internal quotation marks omitted); see F.R.C.P. 12(b)(1). For the purpose of diversity jurisdiction, "a statement of the parties' residence is insufficient to establish their citizenship." *Davis v. Cannick*, 2015 WL 1954491, at *2 (E.D.N.Y. 2015); *Young-Gibson v. Patel*, 476 Fed. App'x 482, 483 (2d Cir. June 12, 2012). "For purposes of diversity jurisdiction, [an individual's] citizenship depends on his domicile." *Linardos v. Fortuna*, 157 F.3d 945, 948 (2d Cir. 1998).

The citizenship of a limited liability company is determined by the citizenship of each of its members. *See*, *e.g.*, *Bayerische Landesbank, New York Branch v. Aladdin Capital Management LLC*, 692 F.3d 42, 49 (2d Cir. 2012). "A complaint premised upon diversity of citizenship must allege the citizenship of natural persons who are members of a limited liability company and the place of incorporation and principal place of business of any corporate entities who are members of the limited liability company." *New Millennium Capital Partners, III, LLC v. Juniper Grp. Inc.*, 2010 WL 1257325, at *1 (S.D.N.Y. Mar. 26, 2010) (citation omitted).  Here, Plaintiff has not correctly asserted their citizenship for diversity purposes.  Plaintiff makes no allegations concerning the citizenship of all of the Defendants' members.  As noted above, Plaintiff has named Footbik USA as a plaintiff (improperly) and as a defendant. Plaintiff Kaban is alleged to be a citizen of, and domiciled in, Ukraine. Compl. ¶ 2. Defendant Berkovsky is a "resident" of New Jersey whose citizenship is not alleged.  Compl. ¶ 9.  The Footbik Entity Plaintiffs are companies whose members are Plaintiff Kaban, Defendant Berkovsky and non-party Alexey Vitashkevich (Compl. ¶¶ 7, 31), but the Complaint is devoid of allegations regarding the citizenship of these

entities, stating only that they, and Plaintiff Future Stars LLC, are registered, respectively, in New Jersey or New York.  Compl. ¶¶ 3-8.  This is a failure to plead diversity subject-matter jurisdiction. Further, because the purported trademark infringement claim (Count VIII) is actually a state law breach of contract claim for the reasons discussed below (Section IV.C), there are no claims under federal law, and accordingly, the Complaint should be dismissed for lack of subject matter jurisdiction pursuant to F.R.C.P. 12(b)(1).

## IV. PLAINTIFF'S CLAIMS SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM.

### A. Standards For Motion To Dismiss.

"To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege sufficient facts, taken as true, to state a plausible claim for relief."  *Johnson v. Priceline.com, Inc*., 711 F.3d 271, 275 (2d Cir. 2013) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)).  At the Rule 12(b)(6) stage, the Court accepts all well-pleaded factual allegations in the complaint as true and draws all reasonable inferences in the light most favorable to the plaintiff.  See *Gibbons v. Malone*, 703 F.3d 595, 599 (2d Cir. 2013).  That presumption of truth "is inapplicable to legal conclusions," however.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Thus, '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678).

### B. Plaintiff has Failed to state a claim for Injunctive Relief (Count VII) and for Theft of Trade Secrets (Count V).

Count VII for Injunctive relief (which Plaintiff also seeks in this action) is a remedy, not an independent ground for relief. *O Zon Inc. v. Charles*, 272 F. Supp. 2d 307, 312 (S.D.N.Y. 2003). Further, the request for injunctive relief is improper because a monetary remedy is plainly adequate.  While circumstances may exist where lost profits cannot be reasonably estimated, thus

making injunctive relief potentially available, Plaintiff fails to allege any facts indicating that such circumstances exist here, particularly since the TLA provides for specific royalty fees, and losses for failure to pay royalty fees would be readily ascertainable. See *Blank v. Pollack*, 916 F. Supp. 165, 171 (N.D.N.Y. 1996) ("[t]he mere allegation of lost profits, i.e. economic damage, is insufficient to show irreparable harm") (citing *Jackson Dairy, Inc. v. H.P. Hood & Sons*, 596 F.2d 70, 72 (2d Cir. 1979)).

Plaintiff's claim that he is entitled to injunctive relief because Defendants have, or may in the future, allegedly used the soccer youth training exercise trade secrets to advance their own soccer training programs is similarly unavailing. Plaintiff specifically alleges that soccer training exercises are trade secrets. Compl. ¶ 51. Under the New Jersey Trade Secrets Act, ("NJTSA"), *N.J.S.A.* 56:15-1, *et seq.*, a "trade secret" means information, held by one or more people, without regard to form, including a formula, pattern, business data compilation, program, device, method, technique, design, diagram, drawing, invention, plan, procedure, prototype or process, that:

> (1)   Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and

> (2)   Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Here, the soccer trainings that comprise the purported trade secrets *are used for, shared with, and observed by, the consuming public*, namely by the children being taught (Compl. ¶¶ 15, 23), and by their parents or anyone else present at the soccer trainings. Such soccer training information is not kept "secret" and therefore cannot be trade secrets or even confidential information.  Plaintiff does not, and cannot, allege that the children being taught or their parents or other persons observing the soccer trainings are required to keep any soccer training information

confidential. Plaintiff does not, and cannot, allege that the subject agreements contain confidentiality provisions. Because Plaintiff provides no facts alleging that Defendants are likely to disseminate cognizable trade secrets, monetary relief is an adequate remedy for the harms alleged.  Plaintiff has failed to allege any cognizable trade secret. Accordingly, the claims for injunctive relief, Count VII, based upon purported threat of dissemination of trade secrets and Count V for theft of trade secrets, should be dismissed for failure to state a claim.

C.     **The Complaint Fails To State A Claim For Trademark Infringement Under The Lanham Act And Should Be Dismissed.**

Plaintiff's claim for Trademark infringement under the Lanham Act Section 1114 is actually a state law breach contractual claim for royalties under the TLA and the purported trademark infringement claim should be dismissed.

Plaintiff Kaban purports to asserts a claim against Footbik USA for federal trademark infringement under the Lanham Act, 15 U.S.C. § 1114.  To support this claim, Plaintiff Kaban alleges he is the owner of a trademark registration for FOOTBKIK (Compl. ¶¶ 95, 97).  ***Plaintiff Kaban admits on the face of the Complaint that Kaban and Footbik USA entered into a valid TLA; Footbik USA is the trademark licensee in the United States for the FOOTBIK mark; and Footbik USA has failed to pay royalties under the licensing agreement***. (Compl. ¶¶40 41, 37 98- 101).  These allegations do not, and cannot, amount to a trademark infringement claim.

Section 43(a) of the Lanham Act provides, in relevant part:

"(1) Any person who, on or in connection with any... services... uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin... or false or misleading representation of fact, which--

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to

the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,  shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

…

15 U.S.C. § 1125(a).

"To state a claim for trademark infringement under sections 32(1)(a) and 43(a) of the Lanham Act, plaintiff[s] must allege facts that establish that [their] mark merits protection and that Defendants' use of [the] mark is likely to cause consumer confusion as to the mark's source." *Arnold v. ABC, Inc.*, No. 06  Civ. 1747(GBD), 2007 U.S. Dist. LEXIS 5802, at *2 (S.D.N.Y. January 29, 2007), citing *Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 454 F.3d 108, 115 (2d Cir. 2006).

Here, Plaintiff does not allege a theory of recovery upon a claim of false designation of origin or "passing off."  Plaintiff does not, and cannot, assert that Footbik USA is not a proper licensee of the mark.  Indeed, Plaintiff expressly asserts that Footbik USA is a valid licensee of the mark.  (Compl. ¶ 41). Plaintiff does not assert a likelihood of confusion as to the mark's source. Accordingly, there is no valid trademark infringement claim under Section 1114. Rather, Plaintiff has tried to make what is actually a state law breach of contract claim as trademark infringement, but fails to state a claim for infringement.

## V.   DERIVATIVE COUNTS II, IV, V and VII SHOULD BE DISMISSED BECAUSE PLAINTIFF LACKS STANDING TO ASSERT THESE CLAIMS IN THIS ACTION

Plaintiff has asserted derivative counts for breach of fiduciary duty (Count II), conversion of monies (Count IV), theft of trade secrets (Count V), and "injunction" (Count VII), but lacks standing to assert those claims.

### A.      Standards For Motion To Dismiss Under Rule 23.1.

Federal Rule of Civil Procedure 23.1 "requires that a plaintiff in a . . . derivative action 'state with particularity . . . any effort by the plaintiff to obtain the desired actions from the directors . . . and . . . the reasons for not obtaining the action or not making the effort.'" *Canty v. Day*, 13 F. Supp. 3d 333, 341 (S.D.N.Y. 2014), aff'd, 599 F. App'x 20 (2d Cir. 2015) (second, third, and fourth alterations in original) (quoting Fed. R. Civ. P. 23.1(b)(3)). "This rule sets forth a 'rule of pleading' as to 'the specificity of facts alleged with regard to efforts made to urge a corporation's directors to bring the action in question,' which is referred to as 'demand' on the corporation." *Id.* at 341–42 (quoting *Halebian v. Berv*, 590 F.3d 195, 206 n.7 (2d Cir. 2009)).

"In contrast to a motion to dismiss pursuant to Rule 12(b)(6), a Rule 23.1 motion to dismiss for failure to make a demand is not intended to test the legal sufficiency of the plaintiffs' substantive claim," but instead "its purpose is to determine who is entitled, as between the corporation and its shareholders, to assert the plaintiff's underlying substantive claim on the corporation's behalf." *In re Veeco Instruments, Inc. Sec. Litig.*, 434 F. Supp. 2d 267, 273 (S.D.N.Y. 2006) (second quoting *Levine v. Smith*, 1989 WL 150784, at *5 (Del. Ch. 1989), aff'd, 591 A.2d 194 (Del. 1991)). "Because Rule 23.1 requires that plaintiffs make particularized allegations, it imposes a pleading standard higher than the normal standard applicable to the analysis of a pleading challenged under Rule 12(b)(6)." *Canty*, 13 F. Supp. 3d at 342 (quoting *In re Am. Int'l Grp., Inc. Derivative Litig.*, 700 F. Supp. 2d 419, 430 (S.D.N.Y. 2010), aff'd, 415 F. App'x 285 (2d Cir. 2011)). "The 'adequacy' of a plaintiff[']s pre-suit demand efforts 'is to be determined by state law absent a finding that application of state law would be inconsistent with a federal policy underlying a federal claim in the action.'" *Id.* (quoting *Halebian*, 590 F.3d at 206 n.7).

Under Federal Rule of Civil Procedure 23.1, "[a] derivative action complaint must allege with particularity the efforts, if any, made by the plaintiff to obtain the action he desires from the directors or comparable authority . . . and the reasons for his failure to obtain the action or for not making the effort." *Laufer v. Olla Indus., Inc.*, 96 F.R.D. 230, 232 (S.D.N.Y. 1982), aff'd, 729 F.2d 1444 (2d Cir. 1983) (quoting Fed. R. Civ. P. 23.1.) Plaintiff admits that he did not make any pre-suit demand upon the Defendants. (Compl. ¶55.) Instead, he contends that the demand requirement is excused because any such demand would have been futile. (FAC ¶¶ 53-52.)

As a general matter, standing "refers to the plaintiff's ability or entitlement to maintain an action before the court." *New Jersey Citizen Action v. Riveria Motel Corp.*, 296 N.J. Super. 402, 409 (App. Div.), certif. granted, 152 N.J. 13 (1997), and appeal dismissed as moot, 152 N.J. 361 (1998). "Entitlement to sue requires a sufficient stake and real adverseness with respect to the subject matter of the litigation." *In re Adoption of Baby T*, 160 N.J. 332 (1999) (citing *Crescent Park Tenants Ass'n v. Realty Equities Corp.*, 58 N.J. 98, 107 (1971)).  For the purposes of standing, a substantial likelihood of some harm visited upon the plaintiff in the event of an unfavorable decision is needed. *See Home Builders League of South Jersey, Inc. v. Berlin Tp.*, 81 N.J. 127, 134-135 (1979). If a plaintiff lacks standing, the court is precluded from considering any of the substantive issues presented for determination. *See Watkins v. Resorts Int'l Hotel and Casino*, 124 N.J. 398, 424 (1991).

While courts recognize that limited liability companies and corporations share the attribute of limited liability, they are seen in the eyes of the law as distinct legal entities with different characteristics to satisfy different policy goals. *See e.g. Mariner's Bank v. 4921 Bergenline Corp.*, 2014 N.J. Super. Unpub. LEXIS 120, at *11-15 (App. Div. Jan. 23, 2014). Consequently, courts should not "mechanistically import principles of law governing corporations to the law governing

limited liability companies." Id. (citing Steven C. Bahls, Application of Corporate Common Law Doctrines to Limited Liability Companies, 55 Mont. L. Rev. 43, 90-91 (1994)).   That being said, courts recognize that the law of corporations is instructive in numerous contexts relevant to limited liability companies. *Id.* (citing *Elf Atochem N. Am., Inc. v. Jaffari*, 727 A.2d 286, 293-94 (Del. 1999) (applying corporate law to determination of whether a lawsuit against an LLC was derivative or direct because the "derivative suit is a corporate concept grafted onto the limited liability company form").

New Jersey's Revised Uniform Limited Liability Company Act (the "LLC Act") restricts the ability of an LLC member from asserting claims that belong to the LLC.  Specifically, the LLC Act provides that a member may "maintain a derivative action to enforce a right a limited liability company" – that is, in the company's favor – only if "the member first makes a demand on the other members in a member-managed limited liability company . . . requesting that they cause the company to bring an action to enforce the right, and the managers or other members do not bring the action within a reasonable time" or if they establish that a demand "would be futile." *See* N.J.S.A. § 42:2C-68. The LLC Act's provisions for standing are similar to corporation law, which restricts a corporation's shareholder from asserting claims of the corporation. *See Pepe v. Gen. Motors Acceptance Corp.*, 254 N.J. Super. 662, 666 (App. Div.), certif. denied, 130 N.J. 11, (1992) ("shareholders cannot sue for injuries arising from the diminution in value of their shareholdings resulting from wrongs allegedly done to their corporations.  Nor can stockholders assert individual claims for . . . other income lost because of injuries assertedly done to their corporations."). In a derivative action, the complaint shall state with particularity: (1) the date and content of plaintiff's demand and the response to the demand by the managers or other members; or (2) if a demand has not been made, the reasons a demand would be futile. *See* N.J.S.A. § 42:2C-70.   "Implicit in these

26

provisions of the LLC Act is that a member of a limited liability company may not bring an action in his or her own name, to redress wrongs to the company, even if the member indirectly suffers harm as a result." *Mariner's, supra*, 2014 N.J. Super. Unpub. LEXIS 120 at *11-15. To assert a claim in his or her own name against another member, a manager, or the limited liability company to enforce the member's rights and otherwise protect the member's interests, the member must plead and prove "an actual or threatened injury that is not solely the result of an injury suffered or threatened to be suffered by the limited liability company." *See* N.J.S.A. § 42:2C-67.

A court, in its discretion, may "dispense with adherence to the requirements of a derivative action in cases involving closely-held corporations." *Brown v. Brown*, 323 N.J. Super. 30, 36-37 (App. Div.), certif. denied, 162 N.J. 199 (1999)). The court may do so "'if it finds that [it] will not (i) unfairly expose the corporation or the defendants to a multiplicity of actions, (ii) materially prejudice the interests of creditors of the corporation, or (iii) interfere with a fair distribution of the recovery among all interested persons." *Id*. at 36 (quoting American Law Institute, Principles of Corporate Governance: Analysis and Recommendations § 7.01(d) (1992)).

Under New York law, demand is excused because of futility when a complaint alleges with particularity that either:

> [1] A majority of the board of directors is interested in the challenged transaction. Director interest may either be self-interest in the transaction at issue, or a loss of independence because a director with no direct interest in a transaction is "controlled" by a self-interested director . . . [2] the board of directors did not fully inform themselves about the challenged transaction to the extent reasonably appropriate under the circumstances. The long-standing rule is that a director does not exempt himself from liability by failing to do more than passively rubber-stamp the decisions of the active managers . . . [or 3] . . .the challenged transaction was so egregious on its face that it could not have been the product of sound business judgment of the directors.

*Marx v. Akers*, 88 N.Y.2d 189, 200–01 (1996) (citations omitted) (quoting *Barr v. Wackman*, 36 N.Y.2d 371, 381 (1975)). Here, Plaintiff alleges futility on the basis of self-interest.

Compl. ¶ 54. "In the absence of some more meaningful specificity, neither Rule 23.1 nor the 'futility' exception is satisfied." *Ash v. Alexander*, No. 99 Civ. 3820, 2000 WL 20704, at *2 (S.D.N.Y. Jan. 12, 2000); see also *Teamsters Allied Benefit Funds v. McGraw*, No. 09 Civ. 140, 2010 WL 882883, at *7 (S.D.N.Y. Mar. 11, 2010) ("The Complaint does not plead any 'particularized allegations of bias or self-interest' . . . and is therefore insufficient.").

**B.     Lack of Standing for Failure to Make Demand.**

Here, Plaintiff admittedly failed to make demand upon Footbik USA or any of the Footbik Entities and fails sufficiently explain why such demand is futile. Compl. ¶¶ 53-55. Because Plaintiff has not adequately pleaded demand futility, their failure to make a pre-suit demand on the Defendants leaves them without standing to bring this suit under Rule 23.1.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court enter an order compelling Plaintiff to mediate and arbitrate his claims against Defendants and dismissing the action.  Defendants intend to seek attorney's fees for the improper filing of this Complaint per the terms of the attorney's fees provisions of the OAs and TLA.

Respectfully Submitted,

**TINOVSKY LAW FIRM**

By: /s/ Vladislav Tinovsky
    Vladislav Tinovsky, Esq. (NY ID 4450375)
    5 Neshaminy Interplex, Suite 205
    Trevose, PA 19053
    P: 215.568.6862
    E: vtinovsky@tinovskylaw.com
    *Attorneys for Defendants*

Dated: July 28, 2021
Trevose, Pennsylvania

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 28th day of July, 2021, the undersigned filed and/or submitted the above Motion to Compel Mandatory Mediation / Arbitration or, alternatively, to Dismiss Plaintiff's Complaint to the Court and served all counsel of record via email and/or the ECF system.

<u>/s/Vladislav Tinovsky</u>
Vladislav Tinovsky